IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| PARKLAND ENVIRONMENTAL GROUP, INC., an Illinois corporation, | )<br>)<br>) |
| Plaintiff/<br>Counterclaim Defendant, | )<br>)<br>)<br>) |
| v. | )   No. 06-3238<br>) |
| LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, LABORERS' LOCAL #477, | )<br>)<br>)<br>) |
| Defendant/<br>Counterclaim Plaintiff. | )<br>)<br>) |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on cross motions for summary judgment. <u>Laborers' Local 477's Motion for Summary Judgment as to Parkland's Complaint to Vacate the Arbitration Award and as to Laborer's Local 477's Counterclaim to Confirm the Arbitration Award (d/e 22)</u> (Defendant's Motion for Summary Judgment); <u>Motion for Summary Judgment (d/e 23) (Parkland's Motion for Summary Judgment)</u>. Plaintiff Parkland Environmental Group, Inc. (Parkland) filed the pending

1

Complaint (d/e 1) in October 2006, pursuant to Section 301 of the Labor Management Relations Act (LMRA) and the Federal Arbitration Act (FAA), seeking to vacate an arbitration award that was issued on July 18, 2006. See LMRA, 29 U.S.C. § 185; FAA, 9 U.S.C. § 1, et seq.  In June 2007, Defendant Laborers' International Union of North America, Laborers' Local 477 (the Union) filed a Counterclaim, seeking confirmation of the award. For the reasons set forth below, Parkland's request to vacate the arbitration award is denied, and the Union's request for confirmation of the award is allowed.

## BACKGROUND

Parkland, an Illinois corporation, is a small, family business located in Springfield, Illinois.[1]  Parkland provides asbestos abatement and other services.  Parkland typically employs three to four full-time employees. The Union is a labor organization with its principal place of business in Springfield, Illinois.  The parties dispute whether a collective bargaining agreement between them existed covering the work upon which the July 18, 2006, arbitration award was based.

---

[1] Unless otherwise noted, the information contained in this background section is taken from the facts deemed by both parties to be undisputed.

The parties agree that, on March 2, 2004, they entered into a one-page, "project only" participation agreement for work known as the White Oaks Mall Project. Defendant's Motion for Summary Judgment, p. 2, Undisputed Material Fact ¶ 3; id., Ex. A-1; Parkland's Memorandum of Law in Support of its Motion for Summary Judgment (d/e 24) (Parkland's Summary Judgment Memorandum), p. 3-4, Undisputed Material Fact ¶ 4. Parkland used union labor for all work on the White Oaks Mall Project. Parkland's regular employees did not work on the project. Brad Schaive, Business Manager for the Union, testified that at the time that Parkland executed the participation agreement for the White Oaks Mall Project it was understood that Parkland was a "nonunion shop." Id., Ex. 5, Deposition of Brad Schaive (Schaive Dep.), p. 15.

The arbitration award at issue here arose out of a separate, forty-nine page agreement between the parties. The record contains several copies of this document, but for consistency, the Court will cite to it as Exhibit A-2 to Defendant's Motion for Summary Judgment and refer to it as "the Agreement." Parkland asserts that the Agreement was a "project only" participation agreement relating to an asbestos abatement job known as the Washington Street project, while the Union asserts that it constitutes a

3

multi-year, comprehensive collective bargaining agreement. Because the Agreement is central to the determination of the pending Motions, the Court addresses its contents in detail.

On its face, the Agreement states that it extends to "Building Construction work with Federal, State, County, City, Township or private work within the jurisdiction of [Local 477]" and that the conditions set forth in it "shall prevail from May 1, 2003, through April 30, 2008." Defendant's Motion for Summary Judgment, Ex. A-2, Agreement, p. 4. Article 13 of the Agreement contains a severability clause. Article 29 of the Agreement contains an arbitration clause as follows:

> It is specifically agreed that there shall be no strikes, lockouts or cessation or slowdown of work or picketing over any dispute over the application or interpretation of this Agreement, and that all grievances and disputes, excluding jurisdictional disputes, shall be handles [sic] as herein provided.

Id., p. 41. The Agreement then sets out a three step process for dispute resolution outlined below.

At the first step, set out in Art. 29, § 2, "[a]ny dispute of any type concerning the interpretation or application of this Agreement . . . shall be adjusted by the particular Employer and the Union in the first instance, if possible . . . ." Defendant's Motion for Summary Judgment, Ex. A-2,

4

Agreement, p. 41. Under Art. 29, § 3, "[i]n the event the matter is not settled, it shall be referred to the Negotiating Committee . . . ." Id. The Agreement provides that the Negotiating Committee will consist of three employer representatives, selected by the Central Illinois Builders of A.G.C., also known as the Association, and three union representatives, selected by the Southern and Central Illinois Laborers' District Council. Under the Agreement, the decision of the Negotiating Committee will be by majority vote. Section 4 of Art. 29, entitled "Arbitration," provides as follows: "Should the Negotiating Committee be unable to resolve the matter, then the Union or the Employer may refer the matter to arbitration by so notifying the other party involved." Id. The Agreement sets out the procedure for selecting the arbitrator. Article 29, § 5 of the Agreement provides that "[t]he Arbitrator may interrupt [sic] the Agreement and apply it to the particular case presented to him/her, but he/she shall have no authority to add to, or subtract from, or in any way change or modify the terms of this Agreement . . . ." Id., p. 42. Section 7 of Art. 29 states as follows:

> The decision of the Negotiating Committee or of the arbitrator . . . shall be final, binding and conclusive upon all parties . . . and shall be one method of resolving such disputes, provided,

5

> however, that if either party refuses to submit such dispute to arbitration or to abide by the decision of the arbitrator, then either party shall have the right to go into any court for the purpose of enforcing such submission or compliance.

Id.

The Agreement was signed by David Stowers as Vice President of Parkland, as was an attached Addendum setting forth hourly wage rates. The pages that include Stowers' signatures bear a handwritten date of April 1, 2004. Defendant's Motion for Summary Judgment, Ex. A-2, Agreement, p. 47-48. Schaive avers that Stowers signed the Agreement on April 1, 2004. Defendant's Motion for Summary Judgment, Ex. A, Affidavit of Brad Schaive (Schaive Aff.), ¶ 10-11. Schaive testified in his deposition that he and Stowers dated and signed the Agreement, although he further testified that he "would have no idea" whether Stowers forgot to put the date in on that particular occasion. Schaive Dep., p. 19. Parkland disputes that the Agreement was signed on April 1, 2004. Stowers testified in his deposition that he signed the Agreement before he signed the White Oaks Mall Project Agreement. Parkland's Summary Judgment Memorandum, Ex. 4, Deposition of David Stowers (Stowers Dep.), p. 53-54, 94-95. As previously noted, the parties agree that the White Oaks Mall Project

6

Agreement was signed on March 2, 2004. According to Stowers, he signed the Agreement, but left the date blank. Id., p. 55-56. Stowers testified that the notations indicating April 1, 2004, are not in his handwriting. Id., p. 56. Stowers states that he signed the Agreement without reading any of it other than the one-page wage Addendum. Id., p. 65. Stowers testified that he believed, based on verbal communications, that the Agreement was a project only Agreement, relating to the Washington Street project. Id., p. 80-81. Stowers concedes that he signed the Agreement "around the proximity of the Washington Street project," which was performed in April 2004, although Stowers asserts that he was first contacted about the Washington Street project in February 2004. Id., p. 51, 55. The parties agree that Parkland used union labor to complete the Washington Street project and that Parkland's regular employees were not allowed to work on that job.

On May 30, 2006, the Union filed a grievance against Parkland with the Negotiating Committee. Defendant's Motion for Summary Judgment, Exs. A-3 & A-4. Schaive avers that the grievance was filed because Parkland was performing asbestos abatement work at the Furrow Building and for the Springfield Housing Authority without adhering to the terms of the

7

Agreement.  Schaive Aff., ¶ 14.  The Union concedes that Parkland objected to the grievance prior to the arbitration hearing and, furthermore, that Parkland attended the arbitration hearing and made contemporaneous objections that it was not a signatory to a collective bargaining agreement and had not agreed to arbitration of any disputes arising out of the projects at issue.  Parkland's Summary Judgment Memorandum, p. 4-5, Undisputed Material Fact ¶ 6; Local 477's Response to Parkland's Motion for Summary Judgment and Memorandum in Support Thereof (d/e 26) (Defendant's Response), p. 4 (conceding Parkland's Undisputed Material Fact ¶ 6 to be material and undisputed).  On July 18, 2006, the Committee issued its one-page decision.  Parkland's Summary Judgment Memorandum, Ex. 3.  The Committee concluded that Parkland was a signatory to the Agreement.  The Committee then directed Parkland to pay the Union $21,016.00 for work performed on the Furrow Building and for the Springfield Housing Authority.  Id.

    Parkland subsequently filed the pending Complaint, seeking to vacate the arbitration award.  In June 2007, the Union filed its Counterclaim, seeking confirmation of the award.  The parties then filed the pending cross motions for summary judgment.  A party challenging an arbitration award

should file a motion to vacate the award, rather than a complaint, and the matter should proceed in accordance with 9 U.S.C. § 6. Webster v. A.T. Kearney, Inc., 507 F.3d 568, 570-71 (7th Cir. 2007). This, however, was merely a case of mislabeling, as the Complaint clearly sought to vacate the award. See id. at 571. Each side has had ample opportunity to present its arguments and any error in form does not affect the substance of the issues. See Doerflein v. Pruco Securities, LLC, 2009 WL 232134, at *2 (S.D. Ind. Jan. 30, 2009); see also United Food and Commercial Workers, Local 1546 v. Illinois-American Water Co., 2009 WL 1811839, *3 (7th Cir. June 26, 2009) (affirming district court decision confirming arbitration award on cross motions for summary judgment).

## ANALYSIS

The underlying dispute concerns whether the Agreement covers the work that is subject to the arbitration award. Parkland asserts that, even assuming the Agreement covers the work in question, the award should be set aside because: (1) the Agreement is unenforceable because it violates the National Labor Relations Act (NLRA) and (2) the Negotiating Committee erroneously ruled on its own jurisdiction. The Union seeks an order confirming the award based on its assertion that: (1) Parkland agreed to

arbitrate disputes over the scope of the Agreement and (2) Parkland fails to establish any grounds to vacate the award.

### A. Parkland's Motion for Summary Judgment

The Court turns first to Parkland's contentions. "Whether a party has agreed to arbitrate a particular dispute is a question for the courts to decide." United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Industrial and Service Workers International Union v. TriMas Corp., 531 F.3d 531, 536 (7th Cir. 2008) (citing AT & T Techs., Inc. v. Communc'ns Workers of America, 475 U.S. 643, 649 (1986)).  Here, Parkland's participation in the arbitration hearing does not result in a waiver of Parkland's ability to challenge the existence of an Agreement to arbitrate. As the Union concedes, Parkland made contemporaneous objections that it had not agreed to arbitration of any disputes arising out of the projects at issue. Parkland's Summary Judgment Memorandum, p. 4-5, Undisputed Material Fact ¶ 6; Defendant's Response, p. 4 (conceding Parkland's Undisputed Material Fact ¶ 6 to be material and undisputed).  This is sufficient to preserve the question of arbitrability. See Environmental Barrier Co., LLC v. Slurry Systems, Inc., 540 F.3d 598, 606-07 (7th Cir. 2008) (citing AGCO Corp. v. Anglin, 216 F.3d 589, 593 (7th Cir. 2000)).

10

However, as set forth below, Parkland's first argument, that the Agreement is unenforceable because it violates the NLRA, is unavailing because it does not relate specifically to the arbitration clause, but rather challenges the validity of the Agreement as a whole.

Parkland asserts that the Agreement is neither legal nor enforceable because the support of Parkland's employees was not sought or obtained as required under § 9(a) of the NLRA. See 29 U.S.C. § 159. This argument goes to the validity of the Agreement as a whole. The Supreme Court recently considered the question of whether a court or an arbitrator should consider a challenge to the validity as a whole of a contract containing an arbitration clause in Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006). The Buckeye Court reiterated the rule, previously established in Prima Paint Corp. v. Flood & Conklin Mfg. Co., that an arbitration clause is severable from the remainder of a contract. See Prima Paint, 388 U.S. 395 (1967). Applying the rule of severability, the Buckeye Court held as follows: "We reaffirm today that, regardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Buckeye Check Cashing, Inc., 546 U.S. at 449. Thus,

11

Parkland's first basis to set aside the arbitration award fails.

Parkland's second argument is that the Negotiating Committee erroneously resolved the question of its own jurisdiction. The Agreement's arbitration clause is broad, but it does contain certain express exclusions from arbitration. As Parkland correctly points out, Art. 29, § 1 of the Agreement provides that "all grievances and disputes, excluding jurisdictional disputes," shall be subject to its specified dispute resolution procedure. <u>Defendant's Motion for Summary Judgment</u>, Ex. A-2, <u>Agreement</u>, p. 41. The Court further notes that § 2 of Article 29 of the Agreement expressly subjects "[a]ny dispute of any type concerning the interpretation or application of this Agreement between an Employer and the Union" to its dispute resolution procedures. <u>Id</u>. However, Article 29, § 5 provides that "[w]ages, hours and fringe benefits are not arbitrable." <u>Id</u>., p. 42.

As previously noted, whether a party has agreed to arbitrate a particular dispute is a question for the courts. Thus, it is for the Court to decide whether the subject matter of the dispute falls within the scope of the arbitration clause. Courts must "interpret arbitration clauses according to their plain meaning and, in construing language, . . . strive for a

commonsense result." United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Industrial and Service Workers International Union, 531 F.3d at 536. Additionally, "[g]eneral principles of contract interpretation inform our analysis but only to the extent that they comport with the federal policy in favor of arbitration." Id. The Seventh Circuit has instructed that while the arbitrability of a dispute is ordinarily regulated by state law, collective bargaining agreements are interpreted under federal law, although the Court may draw guidance from state law principles if they are compatible with federal labor law policies. Dexter Axle Co. v. International Association of Machinists & Aerospace Workers, Dist. 90, Lodge 1315, 418 F.3d 762, 765 n.1 (7th Cir. 2005).

Parkland argues that the determination of whether the Agreement is "project only" is jurisdictional and, thus, outside the scope of the arbitration clause. As the Union correctly points out, however, the Agreement itself defines "jurisdictional disputes." Article 30 of the Agreement, which immediately follows the Article dealing with dispute resolution, is entitled "Jurisdictional Disputes." Article 30, § 1 provides as follows:

> As used in this Agreement, the term "Jurisdictional dispute" shall be defined ad [sic] any dispute, difference or disagreement involving the assignments of particular work to one class or craft

13

>of employees rather than to a different class or craft of employees, regardless of that employer's contractual relationship to any other employer, contractor, or organization on the site.

Defendant's Motion for Summary Judgment, Ex. A-2, Agreement, p. 43. Article 30 goes on to establish an agreed manner for the resolution of jurisdictional disputes. Id., p. 43-44.

Clearly, a dispute as to the scope of covered work does not fall under the Agreement's definition of jurisdictional disputes. Under general contract interpretation law, the Court must read the Agreement "as a whole with all its parts given effect" and "give contract terms their 'ordinary and popular sense' and avoid resort to extrinsic evidence when faced with unambiguous language." Bland v. Fiatallis North America, Inc., 401 F.3d 779, 783 (7th Cir. 2005) (internal citations and quotations omitted). Under the facts of the instant case, this principle comports with the federal policy in favor of arbitration. Any ambiguity surrounding the term "jurisdictional disputes" is clarified by the inclusion of a definition of the term in the Agreement itself. Thus, the Court finds that the arbitration clause's exclusion of jurisdictional disputes excludes only the type of disputes set out in Article 30. Therefore, Parkland's second argument is also unpersuasive, and Parkland fails to establish that it is entitled to summary judgment.

Furthermore, even if the Court were to apply Parkland's proffered definition of jurisdictional disputes, i.e. disputes regarding an entity's power to exercise authority over persons and subjects, the arguments raised by Parkland nevertheless fall outside the exclusion. Parkland does not dispute whether any agreement was ever made, rather Parkland argues that the Agreement did not extend to the projects upon which the arbitration award was based, which is an argument regarding the meaning of the Agreement. See Buckeye Check Cashing, Inc., 546 U.S. at 444 n.1. As the Seventh Circuit has recognized, "[p]ut simply, 'scope' is a term of the agreement and, as such, is subject to arbitration." United Steel, Paper and Forestry, Rubber, Mfg., Energy, Allied Industrial and Service Workers International Union, 531 F.3d at 537. Parkland's motion for a judgment vacating the arbitration award is denied.

B.   The Union's Motion for Summary Judgment

The Court turns its attention to the Union's request for summary judgment on its Counterclaim. The Union asserts that it is entitled to judgment on its request to confirm the award because Parkland agreed to arbitrate disputes over the scope of the Agreement, and Parkland failed to establish any grounds to vacate the award. Parkland contends that factual

disputes preclude judgment in favor of the Union.  Clearly, factual disputes exist regarding the date that the Agreement was signed, what, if any, assurances were made at the time it was executed, and the parties' related transactions and course of dealings.  However, none of these disputes relate specifically to the arbitration clause.  Thus, as noted in the analysis of Parkland's Motion for Summary Judgment, the resolution of these questions is a job for the arbitrator, not for the Court.  The Negotiating Committee expressly determined that Parkland was a signatory to a collective bargaining Agreement that applied to the work that was the subject of the grievance.  Thus, the Committee rejected Parkland's contention that the Agreement was "project only."

"When parties seek judicial review of an arbitrator's award, the role of the courts . . . is extremely limited."  United Food and Commercial Workers, Local 1546, 2009 WL 1811839, at *3.  Parkland fails to identify evidence to support a finding that the award should be vacated for any of the reasons set out in 9 U.S.C. § 10.  In general, the Court must enforce an arbitration award "so long as it draws its essence from the contract" and the arbitrator did not exceed his authority in rendering his decision.  Id., at *3-4 (internal quotations and citations omitted).  "An arbitrator's decision draws

its essence from the contract if it is based on the arbitrator's interpretation of the agreement, correct or incorrect though that interpretation may be." Id. at *3 (citing cases). According to the Seventh Circuit, "[i]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to draw its essence from the [parties' agreement]." Id. at *4 (internal quotations and citation omitted). The Supreme Court has cautioned that an arbitrator is not free "to dispense his own brand of industrial justice." United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960).

Nothing in the record indicates that the Negotiating Committee disregarded the language of the Agreement to dispense its own brand of justice. In fact, the decision of the Negotiating Committee comports with the plain language of the Agreement. Nor is there any indication that the Negotiating Committee exceeded its authority in rendering the decision. See United Food and Commercial Workers, Local 1546, 2009 WL 1811839, at *4. The undisputed evidence reveals that the parties agreed to have the Negotiating Committee resolve disputes concerning the interpretation or application of the Agreement. The Negotiating Committee

determined that the Agreement applied to the work that was the subject of the grievance. This decision was within the scope of its authority. Therefore, the Union is entitled to judgment confirming the arbitration award.

## CONCLUSION

THEREFORE, for the reasons set forth above, Parkland Environmental Group Inc.'s Motion for Summary Judgment (d/e 23) is DENIED. Laborers' Local 477's Motion for Summary Judgment as to Parkland's Complaint to Vacate the Arbitration Award and as to Laborer's Local 477's Counterclaim to Confirm the Arbitration Award (d/e 22) is ALLOWED. Judgment is entered in favor of Defendant and against Plaintiff on Defendant's Counterclaim. The award of the Negotiating Committee, dated July 18, 2006, is CONFIRMED. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: July 8, 2009

    FOR THE COURT:

                                      s/ Jeanne E. Scott
                                      JEANNE E. SCOTT
                        UNITED STATES DISTRICT JUDGE